1   **COOKSEY, TOOLEN, GAGE, DUFFY & WOOG**
    A Professional Corporation
2   GRIFFITH H. HAYES, ESQ.
    Nevada Bar No. 7374
3   AMY L. STEIN, ESQ.
    Nevada Bar No. 7528
4   3930 Howard Hughes Parkway, Suite 200
    Las Vegas, Nevada 89109
5   Telephone:  (702) 949-3100
    Facsimile:  (702) 949-3104
6
    Attorneys for Defendant
7   SWISS RE LIFE & HEALTH AMERICA INC.

8                   **IN THE UNITED STATES DISTRICT COURT**

9                          **DISTRICT OF NEVADA**

10

11
    BEATRICE THOMPSON,                          Case No.:     CV-S-05-0630-KJD-LRL
12
                Plaintiff,
13
    v.                                          **DEFENDANT SWISS RE LIFE &**
14                                              **HEALTH AMERICA INC.'S,**
    COLUMBUS LIFE INSURANCE COMPANY,            **DEFENDANT RGA REINSURANCE**
15  an Ohio Corporation, SWISS REINSURANCE      **COMPANY'S AND DEFENDANT**
    AMERICA CORPORATION, a New York             **SCOTTISH RE (U.S.) INC.'S NOTICE OF**
16  Corporation, RGA REINSURANCE                **ERRATA**
    COMPANY, a Missouri Company, SCOTTISH
17  REINSURANCE INCORPORATED, a North
    Carolina corporation,
18
                Defendants.
19

20

21  COLUMBUS LIFE INSURANCE COMPANY,
    an Ohio Corporation,
22
                Third-Party Plaintiff,
23
    v.
24
    DMF INSURANCE SERVICES, INC., JOHN
25  DOES 1-10,

26                Third-Party Defendants.

27

28          **PLEASE TAKE NOTICE** that in Defendants Swiss Re Life & Health America Inc., RGA

    Reinsurance Company and Scottish Re (U.S.) Inc.'s Designation of Expert Witness, an unsigned and

                                        1

467.0002  1001571.1

COOKSEY, TOOLEN, GAGE, DUFFY & WOOG

1    unformatted copy of Mr. Wobbeking's report was attached in error.  The corrected and executed

2    report of Ronald L. Wobbeking is hereby attached and served forthwith.  Substantively, the attached

3    report is identical to that which was attached to Defendants' Designation of Expert Witnesses.

4    DATED:  April 18, 2006                    COOKSEY, TOOLEN, GAGE, DUFFY & WOOG

5

6

7    By: _____
                                             GRIFFITH H. HAYES, ESQ.
8                                            Nevada Bar No. 7374
                                             AMY L. STEIN, ESQ.
9                                            Nevada Bar No. 7528
                                             COOKSEY, TOOLEN, GAGE, DUFFY & WOOG
10                                           A Professional Corporation
                                             3930 HOWARD HUGHES PARKWAY
11                                           SUITE 200
                                             LAS VEGAS, NEVADA 89109
12                                           Attorneys for Defendant
                                             SWISS RE LIFE & HEALTH AMERICA INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOKSEY, TOOLEN, GAGE, DUFFY & WOOG

2

467.0002  1001571.1

EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

BEATRICE THOMPSON,

        Plaintiff                 Case No.: CV-S-05-630-KJD-LRL

    v.

COLUMBUS LIFE INSURANCE
COMPANY, an Ohio Corporation, SWISS
REINSURANCE  OF AMERICA, a New York
Corporation, RGA REINSURANCE COMPANY,
a Missouri Company, SCOTTISH REINSURANCE
INCORPORATED, a North Carolina Corporation

        Defendents

## Report of Ronald L. Wobbeking

### Introduction

       I have been retained by counsel for Swiss Re, RGA Re and Scottish Re
(collectively "The Reinsurers") to address the issue of a policyholder's ability to reach
beyond the insurance company they purchased a policy from to that company's reinsurer.
For the reasons set forth below, a reinsurer has no relationship with the policyholder that
would allow this to happen.

### Personal Background and Qualifications

       1. I have worked in the insurance and reinsurance business for 42 years. I worked
almost 36 years at one company – North American Life & Casualty (the name was
changed to Allianz Life Insurance Company of North America in the mid 1990's). I will
refer to this as Allianz. I retired as President in 1999. Allianz not only sold insurance
directly to the consumer but also was very active in buying and accepting reinsurance
from other companies.

       2. I started and was Chairman and CEO of Preferred Life Insurance Company of
New York (Preferred) which was the New York subsidiary of Allianz. Preferred also sold
insurance directly to the consumer and bought and accepted reinsurance from other
insurance companies.

       3. I started and was Chairman and CEO of a London based company for Allianz
that provided corporate capital to Lloyds of London. Lloyds of London operates basically

as several separate reinsurance companies know as syndicates and is recognized as a world wide leader in reinsurance.

4. Since my retirement in 1999, I have served as an arbitrator in approximately 30 arbitrations in insurance and reinsurance arbitrations. I have also served as an expert witness in several insurance and reinsurance disputes. I have attached a listing of the expert witness matters in Exhibit A.

5. I am a Fellow of the Society of Actuaries (FSA) and a Member of the American Academy of Actuaries (MAAA). Both of these professional designations were obtained in 1970. My CV is attached as Exhibit B to this report.

Factual Background

6. I have been retained by The Reinsurers to examine the issue of The Reinsurer's relationship and liability to a policyholder of the cedant. In particular, I have been asked to opine on the ability of a policyholder to reach beyond the insurance company they have a policy with to a reinsurer that the insurance company purchased reinsurance from on that same policy. I am being compensated at the rate of $450 per hour plus expenses.

7. In preparing for writing this report, I have reviewed various documents listed in Exhibit C attached to this report. In addition, I am basing my report on my years of direct experience in insurance and reinsurance. My understanding is that The Reinsurers have moved to dismiss and have engaged in very limited, if any, discovery. I reserve the right to review, respond or supplement my report on anything raised in discovery.

8. Columbus Life placed separate reinsurance contracts with RGA and Swiss Re effective January 1, 2001. While I have not yet reviewed the reinsurance contract of Scottish Re, I believe it is similar in time and substance. The reinsurance contracts provided reinsurance to Columbus Life for amounts in excess of their retention limits. There are various reasons insurance companies purchase reinsurance, but clearly the reason Columbus Life purchased reinsurance here was to protect their retention limit. Each insurance company determines their own retention limit on any one life and instead of limiting the amount of insurance they can write on each individual, they purchase reinsurance in order to respond to those customers who want larger amounts of insurance.

9. In 2004, an insurance policy of $1,000,000 was issued by Columbus Life to Abner Thompson, who died a short time later and a claim was submitted to Columbus Life.

10. Sometime in early 2005, Columbus Life denied the claim and Abner Thompson's beneficiary sued Columbus Life and, later, The Reinsurers for recovery plus damages.

11. The deposition of Keith Brown was taken on September 16, 2005. Mr. Brown is the Chief Underwriter at Columbus Life.

12. The expert report of Jeffrey W. Stempel was provided on October 17, 2005.

## Discussion on Classic Insurer/Reinsurer Relationship

13. The typical insurer/ reinsurer relationship is one where the insurer has a contract with the policyholder and performs the entirety of any interaction with the policyholder. Part of the risk the insurer undertakes from that policyholder is passed on to the reinsurer via a contract solely between the insurer (the cedant) and reinsurer. That risk can be passed on either facultatively or automatically. If done automatically (as in this case), the reinsurer must accept the risk if it is placed according to the terms of the reinsurance agreement (sometimes called treaty). In many cases, the reinsurer will not even know the name of the policyholder and it is most unlikely that the policyholder would even know if there was a reinsurer taking part of the risk, let alone the name of the reinsurer. The insurer is required to report financial information to the reinsurer on a timely manner. The reinsurer has no direct involvement with the policyholder. The insurer has a contract with the policyholder and a totally separate contract with the reinsurer. The reinsurer has no role in the underwriting, administration, premium collection, policyholder service or claims. This is the sole responsibility of the insurer. The reinsurer can be a resource for the insurer in some areas where they may lack expertise, but any advice or input the insurer receives from the reinsurer is not binding on the insurer.

## My Conclusions

14. I refer to Mr. Stempel's report at numbers 51, 52 and 53. This is the only place where he discusses The Reinsurers and their role in this matter. I agree with most of what he says in these three paragraphs, except as noted below. Reviewing Mr. Brown's deposition, it appears that Columbus Life informed The Reinsurers of the claim and The Reinsurers suggested reviewing different types of information. The RGA and Swiss contracts require Columbus to "promptly notify the Reinsure of all claims." This is standard practice in reinsurance contracts. The reinsurer needs to be made aware of claims so they can account for them on their financial records.

15. These contracts also required Columbus Life to "notify the Reinsurer of its intention to contest, compromise or litigate a claim." The key word in this provision is "its". That means it is Columbus Life's decision to deny, contest or litigate the claim. Again, this is very standard in reinsurance contracts.

16. I cannot comment on Mr. Stempel's comment that Columbus "appears to be unwilling to pay the claim unless the reinsurers consented." I don't know what motivated Columbus. However, as Mr. Stempel stated, Columbus must "call it as it sees it" in claims. I agree with this. Only Columbus was involved in the initial underwriting. I have seen no evidence that The Reinsurers were involved in the initial underwriting. Page 71 of Mr. Brown's deposition states that The Reinsurers were not involved in the

underwriting of the policy. Only Columbus knew what information they had when they underwrote the policy. They apparently advised The Reinsurers, as they were required to do, that they were going to deny the claim based on several factors. Even if The Reinsurers agreed, it was based on what Columbus had told them and not inappropriate or interfering with Columbus Life's role or authority. Likewise, even if The Reinsurers asked for additional information or documentation, it would not be inappropriate or interfering with Columbus Life's role or authority. The Reinsurers did not make the decision. In fact, the reinsurance contract is very clear in Article I (at least in the RGA contract) that "the Ceding Company is and will remain solely liable to any insured, policyholder or beneficiary under the Original Policies reinsured hereunder." Mr. Stempel at the end of paragraph 53 says that Columbus "actively invited the (The Reinsurers) to meddle and appears to have given them veto power over the Thompson claim." He refers to the Deposition of Keith Brown at pp. 71-73. Two points on this. The first is that Columbus was required to notify The Reinsurers of the claim and the denial. The second is that the Brown Deposition is very clear that he did not think that The Reinsurers requested that Columbus deny the claim. On page 72 of his deposition he was asked at line 21 "And were Swiss, RGA, or Scottish reinsurance requesting that Columbus deny the claim?" His answer at line 23 was "I'm not aware that they requested that we deny the claim." Further on page 73 at line 6, he was asked "Do you recall reviewing any records where ultimately there was a recommendation (from The Reinsurers) for denial of the claim?" His answer at line 9 was "I don't recall seeing that."

17. From my lengthy experience in the insurance and reinsurance business, the reinsurer has no relationship, contractual or otherwise with the policyholder or beneficiary. It is understood in the industry that the ceding company is responsible for all contact and relationship with the policyholder.

18. I was personally involved in a multitude of reinsurance transactions where Allianz was either the cedant or the reinsurer. In the role of the reinsurer, I have never seen a situation where the policyholder made claims against the reinsurer. This is not a risk that I would have priced for and certainly would not have been something I would have anticipated.

## Conclusion

Based on my understanding of the facts, it is my opinion that The Reinsurers have not stepped outside of the typical relationship that exists between the insurer and a reinsurer. I remain available to comment on further issues that may be raised.

April 14, 2006

_Ronald L. Wobbeking_
Ronald L. Wobbeking, FSA

# Exhibit A

1998 – Dan Kenny v. Central United Life – US District Court for Southern District of Texas. Expert for Kenney regarding his role and payment of finders fees and defining reinsurance. Report was issued and testified at jury trial in Texas.

1999 – Security Life v. Care Florida – Arbitration. Expert for Security Life regarding HMO/PPO risk sharing. Report issued.

1999 – Estate of David Reichberg v. Mary Reichberg – Surrogates Court of the State of New York- County of Westchester. Expert for Mary Reichberg regarding state of direct response insurance market. Settled before report given.

2000 - M Financial v. Stockfleth/ Clark Bardes – Multnomah County (Oregon) Circuit Court. Expert for Stockfleth/Clark Bardes regarding actuarial trade secrets. Testified in court.

2000 – ReliaStar v. IOA Re/ Swiss Re – US District Court – Minnesota. Expert for RelisStar regarding duties of retrocessionaire. Expert report given and deposition taken. Summary judgment granted.

2001 – ISA v. various reinsurers. Expert for various reinsurers regarding catastrophe reinsurance protection for a pool. Matter settled before report given.

2002 – Excess Risk Underwriters v. Lafayette life. US District Court, Southern District of Florida, Miami Division. Case no.: 01-411-CIV-Gold/Simonton. Expert report issued on block transfer of insurance business and practices thereof. Expert report issued and matter settled.

2003 – National Health Insurance Company v. National Plan Administrators, CRS Marketing Agency, INC. and Hartford Life. Cause no. GN101679, in the District Court of Travis County, Texas 53rd Judicial District. Testified at jury trial for NPA on insurance industry standards regarding TPA/carrier relationship, exit strategies, dynamics of a closed book of business and mitigation of damages.

2004 – Hannover Re v. CARF Pool in London Courts. Expert for CARF Pool on aviation carve out reinsurance. Case settled after expert report written.

2004 – Monumental v. Anatra Enterprizes. Expert for Monumental regarding underwriting of small group insurance. Settled before report given.

2005 – Transamerica v. Tilling – London Arbitration. Expert for Transamerica regarding Aviation carve out reinsurance. Report issued and case settled during arbitration.

2006 – IISC v. Hartford – US District Court for District of Connecticutt – case no.: 3-04-CV-1512(JCH). Expert for IISC regarding Long Term Care insurance and direct response marketing. Report issued, deposition given and case still pending.

Exhibit B

Ronald L. Wobbeking
The Wobbeking Network
2635 Fountain Lane
Plymouth, MN 55447
763-249-0225   612-677-3994 (Fax)

2000 to date - Wobbeking Network

I have served in over 35 arbitrations, including 8 as Umpire, in the insurance
and reinsurance business. I have also served as an expert witness and
consultant multiple times in the life and health business.

1964 to 1999 - Allianz Life Insurance Company of North America

Retired as President in October, 1999. Responsibilities at that time included
overall management of all reinsurance, including Individual Life, HMO,
Provider Excess, Employer Stop Loss, Special Risk and Personal Accident.
Also responsible for all association and affinity group direct response and
voluntary purchase market. The business under my management marketed a
full portfolio of life, disability and accident and health insurance and
reinsurance programs distributed through a direct and TPA, MGU (including
pools) or Broker/Administrator network.

From 1996 through 1998, I was also responsible for the life and variable
annuity operation. This involved over $10 billion of assets under management
distributed through the broker/dealer network. I was also responsible for a
Canadian, Mexico and Caribbean scholarship operation.

From 1994 until retirement, I was Chair and CEO of Preferred Life Insurance
Company of New York, a wholly owned subsidiary marketing variable and
group insurance programs, Chair of North American London Underwriters
that provided $75 million of corporate capital to Lloyds and Chair of
Ultralink that provided nationwide network services for health programs

# Exhibit C

I have been presented with the following documents:

1. Automatic and Facultative Y.R.T Agreement between Columbus and RGA.

2. Notice of motion and motion of defendant Swiss Re to dismiss plaintiff's amended complaint for failure to state a claim, or in the alternative, for judgment on the pleadings.

3. RGA supplemental joinder in Scottish Re's motion to dismiss the amended complaint or in the alternative for judgment on the pleadings.

4. Defendant Scottish Re's reply to plaintiff's opposition to "Scottish motion to dismiss for failure to state of claim, or in the alternative, judgment on the pleadings.

5. Notice of motion and motion by defendant RGA to dismiss portions of plaintiff's complaint and to strike punitive damages; memorandum of points and authorities filed in support thereof.

6. Defendant Scottish Re's motion to dismiss plaintiffs amended complaint for failure to state a claim or, in the alternative, judgment on the pleadings.

7. Opposition to RGA motion to dismiss portions of plaintiff's complaint and to strike punitive damages.

8. Opposition to Scottish motion to dismiss complaint for failure to state a claim or, in the alternative, judgment on the pleadings.

9. Deposition of Keith Brown.

10. Beatrice Thompson's expert witness disclosure.

11. Amended complaint.

12. Automatic and Facultative YRT Agreement between Columbus and Swiss Re along with an amendment dated June 27, 2001 and treaty specific correspondence dated September 30, 2004.